**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number: 2014-NMSC-014

Filing Date:  May 8, 2014

Docket No. 33,896

JAMES RODRIGUEZ, individually and as
representative of the Estates of JANELL L.
RODRIGUEZ and DAVID RODRIGUEZ, deceased,
LEANN AGUILAR, DOMENIC A. RODRIGUEZ,
JUAN M. TERRAZAS, individually and as representative
of the Estate of VIVIANA E. TERRAZAS, deceased,
LUDIVINA TERRAZAS ENRIQUEZ, and BILLY J.
TRUJILLO, as next friend of ISAIAH TRUJILLO,

       Plaintiffs-Petitioners,

v.

DEL SOL SHOPPING CENTER ASSOCIATES,
L.P. a/k/a DEL SOL SHOPPING CENTER, BGK
PROPERTIES, INC., BGK REALTY, INC., BGK
PROPERTY MANAGEMENT, L.L.C., and BGK
EQUITIES III, INC.,

       Defendants-Respondents,

and

MARIA C. BUSTAMANTE, as representative
of the Estate of MICHAEL SOLCHENBERGER,
and his wife LYDIA SOLCHENBERGER, deceased,

       Plaintiffs-Petitioners,

v.

BGK PROPERTIES, INC., DEL SOL SHOPPING
CENTER ASSOCIATES, L.P., and CONCENTRA
HEALTH SERVICES, INC.,

       Defendants-Respondents.

1

**and**

**Docket No. 33,949**

**JAMES RODRIGUEZ, individually and as representative of the Estates of JANELL L. RODRIGUEZ and DAVID RODRIGUEZ, deceased, LEANN AGUILAR, DOMENIC A. RODRIGUEZ, JUAN M. TERRAZAS, individually and as representative of the Estate of VIVIANA E. TERRAZAS, deceased, LUDIVINA TERRAZAS ENRIQUEZ, and BILLY J. TRUJILLO, as next friend of ISAIAH TRUJILLO,**

  **Plaintiffs-Petitioners,**

**v.**

**DEL SOL SHOPPING CENTER ASSOCIATES, L.P. a/k/a DEL SOL SHOPPING CENTER, BGK PROPERTIES, INC., BGK REALTY, INC., BGK PROPERTY MANAGEMENT, L.L.C., and BGK EQUITIES III, INC.,**

  **Defendants-Respondents,**

**and**

**MARIA C. BUSTAMANTE, as representative of the Estate of MICHAEL SOLCHENBERGER, and his wife LYDIA SOLCHENBERGER, deceased,**

  **Plaintiffs-Petitioners,**

**v.**

**BGK PROPERTIES, INC., DEL SOL SHOPPING CENTER ASSOCIATES, L.P., and CONCENTRA HEALTH SERVICES, INC.,**

  **Defendants-Respondents.**

**ORIGINAL PROCEEDING ON CERTIORARI**

**Sarah M. Singleton and Clay Campbell, District Judges**

O'Friel & Levy, P.C.
Daniel J. O'Friel
Aimee S. Bevan
Santa Fe, NM

for Petitioner Maria C. Bustamante

Jaramillo Touchet, L.L.C.
David Joseph Jaramillo
Ryan McKelvey
Albuquerque, NM

Joe Cruz Castellano, Jr.
Santa Fe, NM

Law Office of Bea Lockhart
Bea Castellano-Lockhart
Santa Fe, NM

Escamilla Law Firm, P.L.L.C
John G. Escamilla
McAllen, TX

for Petitioners James Rodriguez, Leann Aguilar, Domenic A. Rodriguez, Juan M. Terrazas, Ludivina Terrazas Enriquez, and Billy J. Trujillo

Madison & Mroz, P.A.
Ada B. Priest
M. Eliza Stewart
Albuquerque, NM

for Respondents BGK Properties, Inc., Del Sol Shopping Center Associates, L.P., BGK Realty, Inc., and BGK Equities, III, L.L.C.

Civerolo, Gralow, Hill & Curtis, P.A.
Lisa Entress Pullen
M. Clea Gutterson
Albuquerque, NM

for Respondent BGK Property Management, L.L.C.

Brown & Gay, P.C.
Remo E. Gay, Jr.
Melissa A. Brown
Albuquerque, NM

for Respondent Concentra Health Services, Inc.

David J. Stout
Michael B. Browde
Albuquerque, NM

for Amicus Curiae New Mexico Trial Lawyers Association

A. Blair Dunn
Albuquerque, NM

Pacific Legal Foundation
Deborah J. La Fetra
Jennifer M. Fry
Sacramento, CA

for Amicus Curiae Pacific Legal Foundation

## OPINION

**CHÁVEZ, Justice.**

**{1}**     In this opinion we clarify and expressly hold that foreseeability is not a factor for courts to consider when determining the existence of a duty, or when deciding to limit or eliminate an existing duty in a particular class of cases.  We reaffirm our adoption of Restatement (Third) of Torts:  Liability for Physical and Emotional Harm § 7 comment j (2010), *see Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶¶ 15, 18, 148 N.M. 646, 241 P.3d 1086, and require courts to articulate specific policy reasons, unrelated to foreseeability considerations, if deciding that a defendant does not have a duty or that an existing duty should be limited.  Foreseeability is a fact-intensive inquiry relevant only to breach of duty and legal cause considerations.  What may not be foreseeable under one set of facts may be foreseeable under a slightly different set of facts.  Therefore, foreseeability cannot be a policy argument because foreseeability is not susceptible to a categorical analysis.  We do not hold that courts may never consider foreseeability; however, when a court does so, it is to analyze no-breach-of-duty or no-legal-cause as a matter of law, not whether a duty exists.

## BACKGROUND

**{2}**     In these consolidated cases, a truck crashed through the front glass of the Concentra

Medical Clinic (Concentra) in the Del Sol Shopping Center (Del Sol) (collectively Defendants) in Santa Fe, killing three people and seriously injuring several others. Both groups of Plaintiffs (collectively Plaintiffs) sued Del Sol's owners and operators, alleging that Del Sol negligently contributed to the accident by, among other things, failing to adequately post signage; failing to install speed bumps; failing to erect barriers that would have protected buildings, employees, and visitors from errant vehicles; or failing to use other traffic control methods in the parking lot. Relying on *Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶¶ 8-9, 146 N.M. 520, 212 P.3d 408, both district courts granted summary judgment and found that this accident "was not foreseeable" as a matter of law, and therefore found that no duty existed.

**{3}** On appeal, the Court of Appeals consolidated the two cases and affirmed the district courts' common ruling on summary judgment that Defendants "had no duty to protect Plaintiffs inside the building from criminally reckless drivers." *Rodriguez v. Del Sol Shopping Ctr. Assocs.*, 2013-NMCA-020, ¶ 1, 297 P.3d 334, *cert. granted*, 2013-NMCERT-001. After an exhaustive analysis of New Mexico precedent, the Court of Appeals correctly rejected the foreseeability-driven duty analysis relied upon by the district courts, stating that it was affirming both cases based on a "policy-driven duty analysis advanced by the Restatement (Third) of Torts . . . and recently embraced by our New Mexico Supreme Court in *Edward C.* . . . , 2010-NMSC-043, ¶ 15." *Del Sol*, 2013-NMCA-020, ¶ 1. We agree with the Court of Appeals that New Mexico case law has created confusion regarding the extent to which foreseeability considerations are relevant to the legal determination of duty. *Id.* ¶¶ 6-11. We will not belabor the discussion of the cases that have caused the confusion, including *Edward C.*, which noted that foreseeability plays some role, although it is limited, in the determination of duty. Instead, we take this opportunity to explain why foreseeability should not be considered when determining duty, both generally and when considering the analysis of the Court of Appeals in these cases. We overrule prior cases insofar as they conflict with this opinion's clarification of the appropriate duty analysis in New Mexico. And because we conclude that the Court of Appeals analysis is a no-breach-of-duty analysis more than a policy-driven duty analysis, we reverse the Court of Appeals.

**DISCUSSION**

**{4}** Foreseeability and breach are questions that a jury considers when it decides whether a defendant acted reasonably under the circumstances of a case or legally caused injury to a particular plaintiff. *Torres v. State*, 1995-NMSC-025, ¶ 15, 119 N.M. 609, 894 P.2d 386. Juries are instructed that "[a]s the risk of danger that should reasonably be foreseen increases, the amount of care required also increases." UJI 13-1603 NMRA. Foreseeability as it relates to breach of duty is a general analysis and does not require that the particular harm to the plaintiff have been anticipated. *See Spencer v. Health Force, Inc.*, 2005-NMSC-002, ¶ 23, 137 N.M. 64, 107 P.3d 504 ("Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence be foreseeable." (internal quotation marks and citation omitted)). The argument before the jury when it is determining whether breach occurred is whether the foreseeable likelihood

and severity of injuries that might have occurred due to the defendant's conduct warranted the additional precautions argued by the plaintiff. *See Ford v. Bd. of Cnty. Comm'rs*, 1994-NMSC-077, ¶ 12, 118 N.M. 134, 879 P.2d 766 (holding that "the ordinary principles of negligence . . . govern a landowner's conduct as to a licensee and invitee. A landowner or occupier of premises must act as a reasonable [person] in maintaining his [or her] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk."). These ordinary arguments relate to breach of duty and legal cause, and are not policy arguments that would justify a no-duty determination or modification of an existing duty.

**{5}** In these cases, the Court of Appeals framed the issue as "[w]hat duty should owner/occupants of a shopping center in New Mexico have to protect business invitees within its buildings from vehicles that depart the confines of designated parking areas?" *Del Sol*, 2013-NMCA-020, ¶ 12. The Court of Appeals then correctly summarized the law in paragraphs 13 and 14 of its opinion. *Id.* The owner/occupier owes a duty of ordinary care under the circumstances, *Ford*, 1994-NMSC-077, ¶ 12, including the duty to exercise ordinary care to prevent harmful conduct from a third person, even if the third person's conduct is intentional, *Reichert v. Atler*, 1994-NMSC-056, ¶ 11, 117 N.M. 623, 875 P.2d 379. The duty of ordinary care applies unless the owner/occupier can establish a policy reason, unrelated to foreseeability considerations, that compels a limitation on the duty or an exemption from the duty to exercise ordinary care. There are a number of cases that illustrate how policy considerations limit the duty of ordinary care.

**{6}** In *Edward C.*, we found a policy reason to modify, albeit minimally, the duty of ordinary care for owners/occupiers of commercial baseball stadiums. 2010-NMSC-043, ¶ 40. The owners/occupiers asked this Court to adopt the "baseball rule," which imposes upon owners/occupiers only a limited duty of care to assure the safety of spectators. *Id.* ¶¶ 8-10. Under the baseball rule, the proprietor of the baseball stadium only has a duty (1) to screen the area of the field behind home plate, and (2) to a sufficient extent, to protect those spectators from being struck by a ball leaving the field of play. *Id.* ¶ 23. We concluded that the unique relationship between the baseball stadium owners/occupiers and their fans, along with the spectators' desire to participate in the game by catching foul balls, warranted a modification of the duty to exercise ordinary care. *Id.* ¶¶ 25, 40. However, we were unwilling to modify the duty of ordinary care to the extent desired by the stadium owners/occupiers. *Id.* ¶¶ 8, 10, 40. Instead, we held that a baseball stadium's owners/occupiers have a duty to "exercise[] ordinary care not to increase the inherent risk of being hit by a projectile leaving the field [of play]," which is symmetrically balanced against the spectators' duty to exercise care to protect themselves from the same risk. *Id.* ¶ 41. The stadium owners'/occupiers' duty of ordinary care remained undisturbed for other premises liability claims. *Id.*

**{7}** By contrast, in *Baldonaldo v. El Paso Natural Gas Co.*, 2008-NMSC-005, ¶ 2, 143 N.M. 288, 176 P.3d 277, we adopted a policy-based approach to modify the firefighter's rule first recognized in *Moreno v. Marrs*, 1984-NMCA-077, ¶¶ 20-21, 102 N.M. 373, 695 P.2d

1322, which precluded firefighters from recovering for injuries sustained while fighting a fire, except in very limited circumstances. In *Baldonado*, the firefighters asked us to abolish the firefighter's rule entirely because it was outdated, "as evidenced by the several jurisdictions that [had] abolished the rule." 2008-NMSC-005, ¶ 8. We declined to abolish the firefighter's rule, but held that policy considerations—the need to encourage the public to request rescue from firefighters while discouraging the public from creating the need for rescue through reckless or intentional acts—warranted a modification of the existing rule. *Id*. ¶¶ 15-18, 21. We expanded firefighters' right to pursue litigation, but only if the defendant was alleged to have acted recklessly or intentionally. *Id.* ¶ 18.

**{8}** Restatement (Third) of Torts itself cites two New Mexico cases to illustrate the difference between a policy-driven and a foreseeability-driven approach to a duty analysis. The first case, *Chavez v. Desert Eagle Distributing Co.*, 2007-NMCA-018, 141 N.M. 116, 151 P.3d 77, is an example of a duty analysis inconsistent with the Restatement approach. Restatement (Third) of Torts, *supra*, § 7 cmt. j at 101-02 (reporter's note to cmt. j). The second case, *Gabaldon v. Erisa Mortgage Co.*, 1997-NMCA-120, 124 N.M. 296, 949 P.2d 1193, *affirmed in part, reversed in part on other grounds*, 1999-NMSC-039, ¶ 39, 128 N.M. 84, 990 P.2d 197, is cited as representative of the approach recommended by the Restatement. Restatement (Third) of Torts, *supra*, § 7 cmt. j at 102 (reporter's note to cmt. j).

**{9}** In *Desert Eagle*, the question was whether a distributor who sold alcohol to a casino owed a duty to plaintiffs injured by a drunk driver who was served alcohol by the casino. 2007-NMCA-018, ¶ 1. The Court of Appeals held that the distributor did not owe a duty to the plaintiffs, discussing at length why it was not foreseeable to the distributor that the casino would serve alcohol to an intoxicated patron. *Id.* ¶¶ 17-24. The foreseeability-driven analysis is what drew criticism in the Restatement. Curiously, the Court of Appeals stated that had the plaintiffs' alleged facts indicating the distributor knew that the casino would serve alcohol in violation of the law, it would have been easier to find foreseeability. *Id.* ¶ 23. This statement by the Court of Appeals illustrates how fluid the foreseeability analysis can be depending on changing fact patterns—a reason for courts *not* to assess foreseeability when considering the existence of a duty. Foreseeability considerations should not be used by a judge to determine the scope of duty, because not even the most experienced judge is capable of anticipating all possible facts that might affect future foreseeability determinations in similar cases.

**{10}** However, the *Desert Eagle* court articulated a much stronger policy reason why the distributor did not have a duty—the "legislature wanted to limit liability for alcohol-related injuries and deaths resulting from the sale or service of alcohol to those who actually exercised some degree of control over the service or consumption of alcohol." 2007-NMCA-018, ¶ 31. Had the *Desert Eagle* court limited its analysis to the policy consideration, its approach would have been consistent with the Restatement.

**{11}** In *Gabaldon*, the Court of Appeals considered whether to recognize a new duty for

non-possessory landlords. The question regarding duty was whether the lessor of a wave pool park had a legal duty to exercise ordinary care in selecting the tenant of the park. 1997-NMCA-120, ¶ 17. The *Gabaldon* court stated "[w]here the discussion of duty involves recognition of a new cause of action, or as here, extension of a recognized theory to a new setting, the issue is better framed as a question of policy." *Id.* ¶ 21. The Court of Appeals articulated policy reasons to support its holding that when:

> the property is designed, intended and required to be used for a particular purpose, and the use has highly dangerous potentialities involving a substantial risk to the general public, and such danger or risk to the public is such that it may be foreseen by the lessor, the lessor owes a duty of reasonable care in selecting and entrusting such property to a lessee.

*Id.* ¶ 46 (internal quotation marks and citation omitted). The Court of Appeals left the foreseeability considerations for the jury. *Id.* ¶¶ 48-49 (finding that the lessor's knowledge that the lessee did not have experience in the operation of a wave pool created genuine issues of material fact). The policy-driven approach employed by the *Gabaldon* court was cited with approval in Restatement (Third) of Torts, *supra*, § 7 comment j at 102 (reporter's note to comment j).

**{12}** In the *Del Sol* cases, the Court of Appeals exempted owners/occupiers of shopping centers from the duty of ordinary care to protect invitees within its buildings from vehicles that departed the confines of designated parking areas. *Del Sol*, 2013-NMCA-020, ¶ 29. To arrive at its no-duty determination, the Court of Appeals considered (1) the nature of the activity, (2) the parties' relationship to the activity, and (3) public policy. *Id.* ¶ 14. Regarding the nature of the activity and the parties' relationship to the activity, the Court was persuaded by statistical evidence that there was a "sheer improbability and lack of inherent danger" of vehicle-pedestrian accidents *within* the related businesses. *Id.* ¶ 16. The flaw in the analysis is that it is a foreseeability-driven analysis, as evidenced by the authorities on which the Court of Appeals relied. *See, e.g.*, *Eckerd-Walton, Inc. v. Adams*, 190 S.E.2d 490, 492 (Ga. Ct. App. 1972) (finding that a merchant could not reasonably anticipate that a negligent motorist would attempt to drive through a store); *Mack v. McGrath*, 150 N.W.2d 681, 686 (Minn. 1967) (concluding that liability cannot be predicated on the remote possibility that a vehicle would jump a curb and expose tenants to injury).

**{13}** The cases relied upon by the Court of Appeals could be read to invoke the concept of remoteness as articulated by Justice Ransom's dissent in *Calkins v. Cox Estates*, 1990-NMSC-044, ¶¶ 23-25, 110 N.M. 59, 792 P.2d 36, and his special concurrence in *Solon v. WEK Drilling Co.*, 1992-NMSC-023, ¶ 21, 113 N.M. 566, 829 P.2d 645. Unfortunately, remoteness also tends to invite a discussion of the particular facts of a case, despite Justice Ransom's admonition that "[r]emoteness, however, is not a fact. It is a policy." *Calkins*, 1990-NMSC-044, ¶ 23 (Ransom, J., dissenting). Justice Ransom may have seen remoteness solely as a policy determination and not a factual one. However, remoteness often leads toward a discussion of the facts in a particular case; insofar as it does so, it is not a

discussion of policy. Since remoteness invites a discussion of particularized facts, we do not approve of using remoteness as the basis for a policy determination. A determination of no duty based upon the foreseeability, improbability, or remote nature of the risk is inconsistent with the Restatement approach, which provides that only "[i]n exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases, a court may decide that the defendant has no duty or that the ordinary duty of reasonable care requires modification." Restatement (Third) of Torts, *supra*, § 7(b).

{14}    In New Mexico, juries are instructed to consider the foreseeability of risk of injury from a third person in premises liability cases. UJI 13-1320 NMRA ("The [owner's][occupant's] duty to protect visitors arises from a foreseeable risk that a third person will injure a visitor and, as the risk of danger increases, the amount of care to be exercised by the [owner][occupant] also increases."). The greater the probability for foreseeable injury to result from certain behavior and the greater the range of severity of injury, the more careful the defendant is required to be. In contrast, the defendant does not have to be as careful when the probability of injury is not as likely, which is relevant to the breach of duty questions usually reserved for the jury. The duty to exercise ordinary care does not only arise in situations where there is an inherent danger. *See Saiz v. Belen Sch. Dist.*, 1992-NMSC-018, ¶ 20, 113 N.M. 387, 827 P.2d 102 ("Activities that are 'inherently dangerous' represent an intermediate category of hazardous activity between those that are nonhazardous (or only slightly so), in which harm is merely a foreseeable consequence of negligence, and activities that are ultrahazardous, in which the potential for harm cannot be eliminated by the highest degree of care."), *limitation of holding on other grounds recognized by Gracia v. Bittner*, 1995-NMCA-064, ¶ 18, 120 N.M. 191, 900 P.2d 351.

{15}    The Court of Appeals also concluded that there was not anything about Del Sol and its adjacent parking lot that "justifies a broadened standard of care owed to visitors." *Del Sol*, 2013-NMCA-020, ¶ 17. However, Plaintiffs are not seeking a broadened standard of care; they simply contend that Del Sol breached the duty of ordinary care. Implicit in the Court of Appeals' determination is that if there was something about the Del Sol parking lot—some significant difference in the fact pattern—the result may have been different. This also suggests a foreseeability-driven analysis. Once a court begins to rely on factual details in deciding whether to modify the duty of ordinary care or exempt a defendant from that duty, the court is really determining that there has been no breach of duty. Similarly, a court's concern that the plaintiffs are seeking a broader standard of care is a concern about whether the plaintiffs expect too much of the defendants—something more than what is reasonable—which is relevant to the issue of breach of duty, not whether a duty is owed, and breach of duty questions are usually reserved for the jury.

{16}    Regarding public policy considerations, the Court of Appeals began its analysis by stating that it would apply public policy as the primary barometer in ascertaining the "scope of ordinary care" owed by Defendants to Plaintiffs. *Id.* ¶ 18. As a preliminary matter, we note that Restatement (Third) of Torts, *supra*, § 7 comment j is concerned with the scope of

duty, and not with the scope of ordinary care. *See Edward C.*, 2010-NMSC-043, ¶¶ 14, 18. This distinction is more than semantic, because to be concerned about the scope of ordinary care is to be concerned about whether a defendant's conduct was reasonable—a breach of duty analysis. Restatement (Third) of Torts, *supra*, § 7 cmt. i (discussing the mistake that courts sometimes make when they "inaptly express" a determination that there was no breach of duty as a matter of law in terms of no duty). On the other hand, concerns about the scope of duty require a judge to articulate policy considerations when modifying the duty of ordinary care or exempting a class of defendants from the duty of ordinary care in a class of cases.

**{17}** The Court of Appeals' specific policy considerations centered around the lack of any:

> "laws, codes or ordinances promulgated by the legislature, nor any governing body, that mandate the placement of barriers sufficient to prevent vehicles that leave the designated roadway from crashing through businesses in a strip mall." Similarly, nothing in the record presented by any plaintiff indicates that Defendants' parking lot was not in full compliance with applicable state and local building codes.

*Del Sol*, 2013-NMCA-020, ¶ 18. Plaintiffs did not plead a theory of negligence per se—that Defendants violated a mandatory law or ordinance. Instead, Plaintiffs' complaint is based solely on a claim that Defendants breached a duty of ordinary care. Full compliance with codes, laws, or ordinances that are silent with respect to the relevant issue—the need for protective devices to minimize risk from vehicle-building collisions—cannot dictate whether the duty of ordinary care should be modified. The only conclusion that can be drawn from such silence is that the legislative branches of local or state government have simply not addressed the issue. *Herrera v. Quality Pontiac*, 2003-NMSC-018, ¶ 14, 134 N.M. 43, 73 P.3d 181 (holding that silence only means that the Legislature has not spoken). Codes and regulations are minimum standards. Santa Fe, N.M. Code 1988 ch. 7-1.1(A)(4) (as amended through January 8, 2014) (adopting the 2009 International Building Code, by and through the 2009 New Mexico Commercial Building Code found at NMAC 14.7.2); *see, e.g.*, 14.7.2.6 NMAC ("The purpose of this rule is to establish minimum standards for the general construction of commercial buildings in New Mexico."). We have also previously rejected the notion that compliance with codes and regulations is conclusive evidence that someone has exercised ordinary care. *Brooks v. Beech Aircraft Corp.*, 1995-NMSC-043, ¶ 38, 120 N.M. 372, 902 P.2d 54. Juries are instructed that:

> What is customarily done by those engaged in the supplier's business is evidence of ordinary care. However, what ought to be done is fixed by a standard of ordinary care, whether it is usually complied with or not.

> Compliance with [industry [customs] [standards] [codes] [rules___ [or] [governmental [rules] [standards] [codes___ is evidence of ordinary care, but it is not conclusive.

10

UJI 13-1405 NMRA. Instead, these are considerations that go to the issue of the defendant's reasonableness.

**{18}** The Court of Appeals also rejected two categories of evidence tendered by Plaintiffs to prove that Defendants failed to act reasonably in order to conclude that Defendants were exempt from the duty of ordinary care. *Del Sol*, 2013-NMCA-020, ¶¶ 19-20. First, the Court rejected the affidavit of Plaintiffs' safety expert, which was supported by academic publications in safety engineering, that identified hazards on Defendants' property that contributed to the errant vehicle crashing into the building and methods to minimize the hazards. *Id.* Second, the Court did not find persuasive several photographs of other local businesses that have installed safety features similar to those identified by Plaintiffs' safety engineer. *Id.* ¶ 19. The Court of Appeals was not persuaded that the proffered evidence "legally establishes a norm of professional safety giving rise to an expanded duty to protect." *Id.* ¶ 20. The Court also expressed the opinion that more safety precautions than those recommended by the safety engineer would be necessary to "have definitively prevented a runaway vehicle from crashing through Del Sol's storefronts" and "have prevented the injuries and loss of life." *Id.* In summary, the Court of Appeals did not believe that the proffered evidence "indicate[d] that Del Sol's election not to employ such safety devices [fell] beneath professional norms of safety," nor did the evidence "establish a newly applicable safety norm, a building code-derived regulation, or a public policy" that would support "the heightened standards of safety advanced by Plaintiffs." *Id.* ¶¶ 20-21.

**{19}** Weighing the evidence in this matter is not a proper policy consideration for departing from the duty of ordinary care. In these cases, Plaintiffs tendered the affidavit and photographs of other local businesses that have installed protective devices as evidence of what type of reasonable precautions should be taken and have been taken to avoid vehicle-building crashes. If a jury is persuaded that Plaintiffs are asking too much of Defendants, the jury will decline to hold Defendants liable, not because no duty of ordinary care was owed, but because even having the duty of ordinary care, Defendants either acted reasonably under the circumstances or their breach of duty did not legally cause the injuries and deaths at Concentra. Courts should not engage in weighing evidence to determine whether a duty of care exists or should be expanded or contracted—weighing evidence is the providence of the jury; instead, courts should focus on policy considerations when determining the scope or existence of a duty of care.

**{20}** We also reject the notion that requiring owners/occupiers of buildings and land to exercise ordinary care makes them "absolute insurers of patron safety" from:

> remote mechanical and human fallibility . . . forcing businesses into one of three undesirable alternatives: (1) significantly revis[ing] the physical and aesthetic layout of buildings and parking lots at substantial expense, (2) retain[ing] the status quo and risk[ing] the enormous cost of catastrophic liability, or (3) clos[ing] down the business premises entirely.

11

*Id.* ¶ 27. First and foremost, the notion ignores our comparative fault system and the weight a jury will give to foreseeability considerations. Second, the presumptive undesirable alternatives identified by the Court of Appeals do not appear to be supported by any evidence. *Id.* At a minimum, the affidavit of Plaintiffs' safety engineer and the photos of other businesses in the vicinity, which are apparently still in business, that have safety features the expert opines would be reasonable to minimize the danger of vehicle-building crashes, create a genuine issue of material fact. *Id.* ¶¶ 20-21.

**{21}** The Court of Appeals also concluded that Del Sol could not have "anticipated, prevented, or even reacted to" the runaway truck, and the Court therefore could "discern no basis on the facts of these cases to legally extend a 'duty to protect' visitors from runaway vehicles into the responsibility of ordinary care applicable to Defendants." *Id.* ¶ 24. To say that Del Sol could not have "anticipated" is to say that the event was not foreseeable, an approach the Court of Appeals sought to avoid, and which we reject in determining the existence of a duty. To say that Del Sol could not have "prevented, or even reacted to" a runaway truck has no bearing on whether a duty exists; rather, it questions whether Del Sol acted reasonably and did not breach the duty of ordinary care.

**{22}** In essence, the Court of Appeals' analysis is focused predominantly on foreseeability considerations and the reasonableness of Defendants' conduct. Foreseeability determinations are reserved for a jury because such determinations require the jury's common sense, common experience, and its consideration of community behavioral norms. The multiple perspectives, shared and diverse experiences of a jury inform its decision-making. As stated by the United States Supreme Court over one hundred years ago, "[i]t is assumed that twelve [people] know more of the common affairs of life than does one [person], that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge." *Sioux City & Pac. R.R. v. Stout*, 84 U.S. (1 Wall.) 657, 664 (1873). This assumption is reflected in the Seventh Amendment of the United States Constitution and Article II, Sections 12 and 14 of the New Mexico Constitution, which are the only provisions in our constitutions that command citizen participation in our democracy—service on a jury, whether it is a grand jury, criminal or civil—for the benefit of every other citizen. N.M. Const. art. II, §§ 12 & 14; NMSA 1978, § 38-5-1 (1969, as amended through 2006). New Mexico state courts take this duty seriously and have cautiously guarded the right to jury trial in civil cases by erring on the side of allowing factual issues to be decided by juries. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 9, 148 N.M. 713, 242 P.3d 280.

**{23}** As an example of a court that correctly resisted the effort to conflate a breach-of-duty analysis with the duty analysis in a vehicle-building collision case, Restatement (Third) of Torts, *supra*, § 7 comment i cites *Marshall v. Burger King Corp.*, 856 N.E.2d 1048 (Ill. 2006). Although we deem the foreseeability discussion of the *Marshall* majority unnecessary, *id.* at 1060, we agree with the ultimate conclusion that an owner/occupier owes a duty of ordinary care in vehicle-building collision cases, *id.* at 1059-60.

**{24}** Courts are not powerless to dismiss cases as a matter of law, despite our holding that a foreseeability-driven duty analysis is inappropriate. A court may still decide whether a defendant did or did not breach the duty of ordinary care as a matter of law, or that the breach of duty did not legally cause the damages alleged in the case. However, these determinations are materially different than a no-duty or modified-duty analysis. The court must determine that no reasonable jury would find that the defendant breached the duty of ordinary care or that the breach legally caused the plaintiff's damages. *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 26, 127 N.M. 729, 987 P.2d 386 ("[A] directed verdict is appropriate only when there are no true issues of fact to be presented to a jury. A trial court should not grant a motion for directed verdict unless it is clear that the facts and inferences are so strongly and overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result." (alteration added) (internal quotation marks and citations omitted)), *overruled on other grounds by Herrera*, 2003-NMSC-018, ¶ 23 n.3. This determination requires judges to abandon their own personal thoughts regarding the merits of cases and to imagine the thoughts of twelve adult citizens from a variety of socioeconomic backgrounds—such as scientists, college faculty, laborers, uneducated, rich, poor, persons with different political persuasions—and what that diverse group might find regarding the merits of a case. The judge can enter judgment as a matter of law only if the judge concludes that no reasonable jury could decide the breach of duty or legal cause questions except one way. Because neither the Court of Appeals nor the district court judges engaged in this analysis, we reverse and remand to the district courts for proceedings consistent with this opinion.

## CONCLUSION

**{25}** Foreseeability is not a question for courts to consider when determining the existence of a duty, or whether to limit or eliminate an existing duty in a particular class of cases. Instead, courts must articulate specific policy reasons, unrelated to foreseeability considerations, when deciding whether a defendant does or does not have a duty or that an existing duty should be limited.

**{26}    IT IS SO ORDERED.**

_____

**EDWARD L. CHÁVEZ, Justice**

**WE CONCUR:**

_____

**PETRA JIMENEZ MAES, Senior Justice**

_____

**RICHARD C. BOSSON, Justice**

13

_____

**MICHAEL D. BUSTAMANTE, Judge**
**Sitting by designation**

**BARBARA J. VIGIL, Chief Justice and CHARLES W. DANIELS, Justice**
**Recused**

**Topic Index for *Rodriguez v. Del Sol Shopping Ctr. Assoc.*, Nos. 33,896/33,949**

**CONSTITUTIONAL LAW**
New Mexico Constitution, General

**NEGLIGENCE**
Duty
Foreseeability
Wrongful Death

**TORTS**
Foreseeability
Invitees
Negligence
Premises Liability
Wrongful Death